UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DYNAMIC MACHINE WORKS INC., )<br>   Plaintiff      )<br>              )<br>vs             )   Docket No. 04-10525-WGY<br>              )<br>MACHINE & ELECTRICAL  )<br>CONSULTANTS, INC.     )<br>   Defendant      ) | |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

   Dynamic Machine Works, Inc. ("Dynamic") is engaged in the manufacture of precision components for military, aerospace, nuclear, chemical, oil and other major industries. Machine & Electrical Consultants ("M&E) is engaged in the sales and service of CNC machine tools for metal cutting applications. This case arises out of a contract for the sale by M&E to Dynamic of a Johnford HT-275G Heavy Duty Turning Center (the "Johnford Lathe").

  Dynamic seeks declaratory judgment with respect to matters of its rejection or revocation of acceptance of the Johnford Lathe, as well as its rights and remedies under the Uniform Commercial Code, and has asserted claims of breach of warranty, breach of contract and violations of M.G.L. c. 93A. M&E has counterclaimed for the contract price.

STATEMENT OF FACTS

1.  In anticipation of Dynamic receiving a contract to manufacture components for a large missile launch barrel, it solicited proposals from M&E for a CNC lathe that would be capable of machining 7 meter (approximately 23 feet) long round components within an

-1-

accuracy of ±..0005" over its entire length. (Fonte Affidavit, Paragraph 4)

2. On or about January 3, 2003, M&E submitted a proposal and specifications to Dynamic for the sale of the Johnford Lathe for $355,000.00. (Fonte Affidavit, Paragraph 5).

3. On or about January 13, 2003, Dynamic issued a purchase order to M&E for the Johnford Lathe and other related equipment, (the "Purchase Order"). The delivery date for the Johnford Lathe was to be on or about May 15, 2003. (Fonte Affidavit, Paragraph 6)

4. Included in the Purchase Order was the rental of a Johnford ST-60B lathe until the new Johnford Lathe arrived. (Fonte Affidavit, Paragraph 7).

5. On or about February 28, 2003 Dynamic notified M&E of problems it was experiencing with the rented Johnford ST-60B lathe. Dynamic further advised that if these problems were not addressed in the new Johnford Lathe it would be rejected. (Fonte Affidavit, Paragraph 8).

6. In and around April 2003, Dynamic was notified that the anticipated May 15, 2003 delivery date would not be met and that delivery would occur in June. (Fonte Affidavit, Paragraph 9).

7. In and around June 2003, Dynamic was notified that the anticipated June 2003 delivery date would not be met and that the Johnford Lathe would be finished and shipped in the middle of August. (Fonte Affidavit, Paragraph 10).

8. By letter agreement dated July 2003 (the "Letter Agreement"), the parties agreed that Dynamic would not cancel the purchase order conditioned upon *inter alia* (1) receipt and approval of the factory performed accuracy test report; (2) a ship date of August 15, 2003; and (3) complete commissioning (operation in accordance with the specifications) of the Johnford Lathe meeting all specifications of the M&E January 3, 2003 proposal, and

addressing the problems identified in its February 28, 2003 communication, by September 19, 2003 (the "Commissioning Deadline"). (Fonte Affidavit, Paragraph 11, Crepeau Deposition, Pages 33-34).

9. M&E agreed that its failure to meet the Commissioning Deadline would result in a penalty of $500.00 per day until complete commissioning was achieved. (Fonte Affidavit, Paragraph 12).

10. The Johnford Lathe was delivered to Dynamic on or about October 9, 2003. (Fonte Affidavit, Paragraph 13).

11. M&E did not meet the Commissioning Deadline and was unable to get the Johnford Lathe to meet the specifications and correct the problems identified. (Fonte Affidavit, Paragraph 14-15; Grosberg Affidavit, Paragraphs 6, 7 and 8; Crepeau Deposition, Pages 24-26 and Page 50).

12. By correspondence dated December 11, 2003, Dynamic notified M&E of its rejection or revocation of any acceptance of the Johnford Lathe for failure to timely make the machine operate in accordance with the specifications and the parties' agreement. Dynamic requested return of its down payment of $29,500.00, as well as payment of the $500.00 per day penalty in the amount of $41,000.00. (Fonte Affidavit, Paragraph 18, Crepeau Deposition, Page 65, line 14-16).

13. Dynamic requested instructions as to the disposition of the Johnford Lathe and indemnity sufficient to cover the expense of complying with such instructions. (Fonte Affidavit, Paragraph 20).

14. To date, M&E has not returned Dynamic's down payment, has not paid the $500.00 day

penalty, and has not provided instructions or indemnity all as requested. (Fonte Affidavit, Paragraph 21, Crepeau Deposition, Page 67-68).

15. Dynamic has incurred expenses and damages relating to the inspection, receipt, transportation, care and custody of the Johnford Lathe. . (Fonte Affidavit, Paragraph 17).

## ARGUMENT

### Standard for Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir. 2001) (citing Fed. R. Civ. P. 56(c)).

For the purposes of summary judgment, "genuine' means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party', and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'" *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 90 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Although all competent evidence and reasonable inferences are viewed in the light most favorable to the non-moving party, it cannot carry the day on mere "`conclusory allegations, improbable inferences, and unsupported speculation.'" *O'Connor v. Steeves*, 994 F.2d 905, 906-07 (1st Cir.), cert. denied, 114 S. Ct. 634 (1993). (quoting *Medina- Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

### Rejection of Goods and Revocation of Acceptance

The contract between M&E and Dynamic is for the sale of goods and is governed by Article 2 of the Uniform Commercial Code. Dynamic contends that it properly rejected the Johnford Lathe

pursuant to §2-602. Dynamic further contends that even assuming any acceptance of the Johnford Lathe, any such acceptance was subsequently revoked as allowed by §2-608.

The summary judgment records reveals no factual dispute that the parties' agreement (as contained in the Purchase Order, incorporating the January 3, 2003 specifications, and the Letter Agreement) required the Johnford Lathe *inter alia* to have positioning accuracy of ± .0005" full stroke and be capable of bringing a 5" bar to center.

The summary judgment record also reveals no factual dispute that from the date of delivery of the equipment on October 9, 2003 until Dynamic notified M&E of its rejection on December 11, 2003, M&E was unable to commission the Johnford Lathe (i.e. get it to operate in accordance with specifications), as neither of the above-referenced requirements had been capable of being met.

Given the undisputed facts, Dynamic asserts it is entitled to summary judgment as a matter of law.

**Rejection of Goods §2-602**

Under the Uniform Commercial Code, §2-601 et seq. and general principles of contract law, a buyer is entitled to reject the delivery of nonconforming or defective goods. Rejection of nonconforming goods must be made within a reasonable time after their delivery, and the buyer must seasonably notify the seller of the rejection. §2-602.

Acceptance of goods only occurs when the buyer (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or (b) fails to make an effective rejection (subsection (1) of §2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against

the seller it is an acceptance only if ratified by him. §2-606.

It is undisputed that Dynamic's acceptance of the Johnford Lathe was conditioned upon the equipment's ability to meet the January 3, 2003 specifications, as well as address the problems identified in its February 28, 2003 communication. Neither approval to ship, nor delivery of the equipment signified any acceptance by Dynamic. It is undisputed that from the date of delivery to the date of notice of rejection, the only use of the Johnford Lathe was for the purpose of testing and commissioning. Any such use could only signify that Dynamic would accept the equipment if the attempted improvements proved effective.

There is no factual evidence to support a finding that Dynamic signified any acceptance of the equipment. The Johnford Lathe was delivered to Dynamic on or about October 9, 2003. M&E contracted with DRW Consulting and Oxford Engineering to verify that the Johnford Lathe met the technical specifications of the parties' agreement. (Crepeau Deposition, Page 37, lines 23-25, Page 38, lines 1-4). DRW conducted tests on or about November 9, 2003, which revealed that the Johnford Lathe did not meet the technical specifications of the parties' contract. (Crepeau Deposition, Page 50). Oxford Engineering conducted testing on or about November 17-25, 2003, but was unable to get the Johnford Lathe to meet the technical specifications of the parties' contract. (Grosberg Affidavit, Paragraphs 6, 7 and 8).

It is undisputed that as of December 11, 2003, the Johnford Lathe did not meet the January 3, 2003 specifications and did not address all of the problems identified in Dynamic's February 28, 2003 communication. M&E was unable, therefore, to fully commission the Johnford Lathe as agreed. Dynamic sent notice of rejection on December 11, 2003. Dynamic was entitled to reject and by written notice, did reject the lathe as nonconforming goods. Dynamic's prompt

rejection following inspection, and notification thereof were, as a matter of law, sufficient to satisfy the statutory requirements.

Even assuming Dynamic accepted the Johnford Lathe, the December correspondence also acted to subsequently revoke any acceptance as allowed by §2-608

**Revocation of Acceptance §2-608**

Under §2-608 a buyer may revoke his acceptance of goods whose non-conformity substantially impairs its value to him if he accepted it on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured.

Dynamic is engaged in the manufacture of precision components. The uncontroverted evidence that from delivery of the equipment on October 9, 2003 until December 11, 2003, the equipment was unable to meet minimal specifications ( i.e. holding specified positional accuracy and bringing a 5" bar to center), supports the conclusion that such failure is not trivial, but substantially impairs the equipment's value to Dynamic. (Fonte Affidavit, Paragraph 16; Crepeau Deposition, Page 23, lines 6-25, Page 24, Page 25, lines 1-10). M&E had ample notice that nonconformity with the agreed upon specifications would result in non-acceptance.

In the instant case, it is undisputed that any acceptance would be based on the assumption that the Johnford Lathe would be capable of meeting the agreed upon specifications and that as of December 11, 2003, the Johnford Lathe was incapable of meeting said specifications. M&E claims, if given more time, under certain conditions, it might be able to get the Johnford Lathe to conform, not necessarily to the agreed upon specifications, but to the factory performed accuracy test report. (Crepeau Deposition, Page 69). However, given its breach of the promised commissioning date of

September 19, 2003, the late delivery, and inability to conform the equipment to the agreed upon specifications, such equivocal assertions are insufficient.

**Remedies**

§2-711 provides that on rightful rejection or justifiable revocation of acceptance a buyer has a security interest in the goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller (section 2-706).

Whether Dynamic rejected or revoked acceptance of the Johnford Lathe, it is entitled as a matter of law to the return of its downpayment and expenses reasonably incurred in inspection, receipt, transportation, care and custody of the equipment. (Fonte Affidavit, Paragraph 17). Further, absent payment, instructions and indemnification from M&E, Dynamic is entitled to sell the equipment in order to recoup its damages.

**Chapter 93A Violation**

Section 2 of Chapter 93A of Massachusetts General Laws prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Upon a finding that a defendant has violated section 2, the court can award a plaintiff compensatory damages. "[R]ecovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the [conduct] was a willful or knowing violation of said section two."

There is ample evidence in the summary judgment record to support the finding that M&E has willfully evaded its known contractual obligations to Dynamic in violation of G.L. c. 93A §2.

*KPS Assoc. Inc. V. Design by Fmc Inc.* (1st Circuit 2003)

Despite acknowledging that from the date of delivery of the equipment until Dynamic's notice of rejection, it was unable to get the Johnford Lathe to meet the contract specifications, as evidenced by both the DRW Consulting and Oxford Engineering reports (both companies hired by M&E), M&E has failed and refused to return Dynamic's downpayment or to provide instructions and indemnification. When asked why M&E had not returned Dynamic's downpayment, its principle Norm Crepeau, only response was, "I don't know". Its justification for not accepting return of the equipment is "I don't want the machine back", and "I want him to buy it". (Crepeau Deposition, Page 67, lines 6-25, Page 68, lines 1-11

M&E's knowledge of nonconformity coupled with its lack of justification for not returning Dynamic's downpayment and accepting return of the equipment is clear evidence of its wilful disregard of its known contractual obligations. M&E never meaningfully responded to Dynamic's rejection. Simply refusing to refund the downpayment or provide instructions is clearly not an appropriate response, nor is the equivocal assertion that given more time, under certain conditions, it might be able to get the Johnford Lathe to conform, not necessarily to the agreed upon specifications, but to the factory performed accuracy test report.

The evidence is sufficient to support the determination that M&E is guilty of a wilful violation of c. 93A. M&E has withheld monies which it legally owes in order to force Dynamic to do what it otherwise would not be legally required to do. *Pepsi-Cola Metropolitan Bottling Co., Inc. v. Checkers, Inc.*, 754 F.2d 10, 17-19 (1st Cir. 1985).

**CONCLUSION**

The summary judgment records reveals no factual dispute of the Johnford Lathe's nonconformity with the agreed upon specifications and Dynamic's notice of rejection of same. Given the undisputed facts, Dynamic asserts it is entitled to summary judgment as a matter of law.

Respectfully submitted,
DYNAMIC MACHINE WORKS INC.
By its Attorney,


 s/Jack Bryan Little
Jack Bryan Little (#301920)
LAW OFFICE OF
JACK BRYAN LITTLE, P.C.
401 Andover Street
North Andover, MA 01845
(978) 682-9985

Date: