UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DYNAMIC MACHINE WORKS, INC., | ) | |
| | ) | |
| Plaintiff | ) | Docket No. 04-10525-WGY |
| | ) | |
| v. | ) | |
| | ) | |
| MACHINE & ELECTRICAL CONSULTANTS, INC., | ) | |
| | ) | |
| Defendant | ) | |

AFFIDAVIT OF NORMAN CREPEAU

I, Norman Crepeau, hereby depose and say as follows:

1.    I am the Vice President of Machine & Electrical Consultants, Inc., 17 Pomerleau Street, Biddeford, Maine 04005. I have been involved in the sales and service of new and used manufacturing machinery and turning equipment, including precision lathes, since 1990. I have personal knowledge of the matters contained herein.

2.    Machine & Electrical Consultants, Inc. ("MECI") is a distributor of high performance new and used CNC manufacturing machinery and turning equipment, including precision lathes like the Johnford HT-275 G Heavy Duty Turning Center (the "Johnford Lathe") sold to Dynamic Machine Works. MECI also services such equipment. MECI has been in business since 1995.

3.    On January 13, 2003, Dynamic agreed to purchase the Johnford Lathe from MECI.

4.    The Johnford Lathe was manufactured in Taiwan by Roundtop Machinery Industries Company, Ltd. ("Johnford").

5. Johnford sells its machines including machine lathes in the United States through Absolute Machine Tools, Inc., located in Lorain, Ohio ("Absolute").

6. The Johnford Lathe was designed to machine lathe tubular cylinders, in this case Tomahawk missile capsules, up to 23 feet in length.

7. The Johnford Lathe has angled guideways over which the cutting tool travels, and is described as a "slant bed" in contrast to a "flat bed" where the guideways are not angled. Attached as Exhibit A and incorporated herein by reference is a photograph of the Johnford Lathe.

8. In addition to the January 3, 2003 proposal agreed to by Dynamic (attached hereto and incorporated herein by reference as Exhibit B) the terms of Dynamic's purchase of the Johnford Lathe also are included in a purchase order from Dynamic dated January 13, 2003 with cover letter (attached hereto and incorporated by reference as Exhibit C), a letter from MECI dated June 26, 2003 (attached hereto and incorporated by reference as Exhibit D), a letter from Dynamic dated July 8, 2003 (attached hereto and incorporated herein by reference as Exhibit E), and a letter from Dynamic dated December 9, 2003 (attached hereto and incorporated herein by reference as Exhibit F).

9. Dynamic's January 13, 2003 letter entering the purchase order (Exhibit C) provides that Dynamic would pay a down payment of $29,500.00, a second payment of $148,000.00 upon delivery, and a final third payment of $177,000.00 after final acceptance of the machine. Dynamic has not paid the second and third payment.

10. When I received Dynamic's $29,500.00 down payment, I promptly forwarded the down payment to Absolute which in turn placed the order with Johnford in Taiwan.

11. Because delivery of the Johnford Lathe was expected to take at least 20 weeks, MECI provided Dynamic with a loaner lathe for the entire waiting period.

12. Production of the Johnford Lathe was delayed for reasons beyond MECI's control including the SARS epidemic. Throughout the production process, MECI informed Dynamic of the developments in Taiwan including providing Dynamic with copies of Johnford's communications regarding the reasons for the delayed production. A copy of Johnford's letter dated June 20, 2003 is attached hereto as Exhibit G and incorporated herein by reference.

13. By letters dated June 26 (Exhibit D) and July 8, 2003 (Exhibit E), MECI and Dynamic confirmed their agreement to continue with the purchase and sale of the Johnford Lathe despite the unavoidable delays and agreed to extend the commissioning deadline to September 19, 2003.

14. Commissioning of the Johnford Lathe involves the installation and initial start up of the lathe at Dynamic's place of business.

15. The July 8 letter agreement (Exhibit E) provided that if commissioning extended beyond September 19, 2003 the purchase price of the Johnford Lathe would be reduced by $500.00 per day to be deducted from the balance owed to MECI once commissioning was complete. The deduction was to provide an incentive to commission the machine as quickly as possible.

16. As requested in the July 8, 2003 letter agreement (Exhibit E), on July 29, 2003, MECI provided Dynamic with a factory performed accuracy report. Dynamic did not object to the report nor did Dynamic request any additional testing or seek clarification of the reported results.

17. On August 15, 2003, Johnford shipped the machine by sea from Taiwan to New York City.

18. On October 9, 2003, the Johnford Lathe was delivered by truck from New York City to Dynamic.

19. After Dynamic completed lagging (bolting) the Johnford Lathe to Dynamic's floor and connecting it to air and electric supply lines, MECI began commissioning the machine.

20. In addition to working with Dynamic employees during the commissioning, MECI also hired Oxford Engineering Company, Inc. ("Oxford") to perform laser testing on the Johnford Lathe.

21. At the beginning of the commissioning process, MECI and Oxford determined that the headstock of the machine was misaligned. The head stock was realigned without complications.

22. The Oxford laser testing was designed to determine the horizontal and vertical alignment of the ways over which the cutting tool travels.

23. The Oxford testing was not designed nor could it determine positional accuracy as defined in the specifications.

24. Oxford last performed testing on the Johnford Lathe at Dynamic on November 26, 2003.

25. After November 26 and through December 10, 2003, MECI service technicians, including Thomas Giovannani, continued to make adjustments to the Johnford Lathe so that the Lathe would operate within specifications.

26. While not required to do so as part of the commissioning, MECI also agreed to oversee certain test cuts on the machine using materials supplied by Dynamic.

27. On December 9, 2003, Dynamic agreed in a letter from its President, Ven Fonte, to a revised commissioning deadline of December 19, 2003. A copy of the letter is attached hereto as Exhibit F and incorporated herein by reference.

28. On December 9, 2003, MECI was confident that the Johnford Lathe would be fully commissioned within specifications on or before December 19, 2003.

29. For whatever reason, on Thursday, December 11, 2003, Dynamic's attorney notified MECI that Dynamic was rejecting or revoking acceptance of the Johnford Lathe and seeking the return of its $29,500.00 down payment and the $500.00 per day payment. This was the first time that Dynamic notified MECI that it intended to reject or revoke acceptance.

30. I immediately contact Ven Fonte and asked him not to do anything to the machine so that I could have Hayden Wellman, the Vice President of Absolute, inspect the machine and assist with the final commissioning process.

31. When Mr. Wellman and I arrived at Dynamic on December 15, 2003, Dynamic had already disconnected, dismantled, and moved the Johnford Lathe.

32. Because the Johnford Lathe had been unbolted from the floor, moved, and the electrical and air supply to the machine had been disconnected, MECI was prevented from completing the successful commissioning of the machine by the December 19, 2003 commissioning deadline previously conveyed by Dynamic.

Signed under the pains and penalties of perjury this __11__ day of October, 2004.

_____
Norman Crepeau