**Supreme Judicial Court for the Commonwealth of Massachusetts**
**John Adams Courthouse**
**One Pemberton Square, Suite 1400, Boston, Massachusetts 02108-1724**
**Telephone 617-557-1020, Fax 617-557-1145**

Jeffrey D. Clements, Esquire
Clements & Clements, LLP
50 Federal Street
Boston, MA 02110

RE: No. SJC-09440

**DYNAMIC MACHINE WORKS, INC.**
**vs.**
**MACHINE & ELECTRICAL CONSULTANTS, INC.**

NOTICE OF DECISION

Enclosed please find a copy of the decision rendered by the court in the above-captioned case.

Susan Mellen, Clerk

Dated: July 29, 2005

NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-09440

DYNAMIC MACHINE WORKS, INC. vs. MACHINE & ELECTRICAL CONSULTANTS, INC.

Suffolk. April 6, 2005. - July 28, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

Uniform Commercial Code, Sale of goods, Acceptance of goods, Revocation of acceptance. Waiver. Contract, Modification, Waiver.

Certification of a question of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

Jack Bryan Little for the plaintiff.
Jeffrey D. Clements (Ingrid S. Martin with him) for the defendant.

CORDY, J. A judge of the United States District Court for the District of Massachusetts has certified the following question: "Under the Massachusetts version of the Uniform Commercial Code, does a buyer have a right to retract a written extension allowing more time for the seller to cure defects in a delivered product absent reliance on the extension by the

seller?"[1] We answer the certified question as follows: If the written extension constitutes a modification of the agreement to purchase the product, then the buyer may not retract it unilaterally. If, on the other hand, the written extension constitutes a waiver of an executory portion of the agreement, the buyer may retract it "by reasonable notification received by the [seller] that strict performance will be required . . . unless the retraction would be unjust in view of a material change of position in reliance on the waiver." G. L. c. 106, § 2-209 (5).

1. Background. The undisputed facts and relevant procedural history are as follows. Dynamic Machine Works, Inc. (Dynamic), is a Massachusetts manufacturer of precision components for the aerospace, chemical, military, and oil industries. Machine & Electrical Consultants, Inc. (Machine), located in Biddeford, Maine, distributes heavy machinery and turning equipment. In January, 2003, Dynamic agreed to purchase from Machine a Johnford lathe (lathe) for $355,000. The lathe was to be manufactured in Taiwan by Roundtop Machinery Industries, Co., Ltd. Under the terms of Dynamic's purchase order, Machine would receive a down payment of $29,500, a second payment of $148,000 on delivery, which was scheduled for May 15, 2003, and a final payment of $177,500 on acceptance. In the interim, Dynamic rented a Johnford ST-60B lathe (rental lathe)

---

[1] The question was certified to this court pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981).

from Machine. In February, 2003, Dynamic informed Machine that it was experiencing problems with the rental lathe and that if these problems were not addressed and remedied in the new lathe, Dynamic would reject it.

Sometime before June, 2003, production of the lathe in Taiwan was delayed due to the "SARS" epidemic and other events beyond the control of Machine. In letters dated June 26 and July 8 (collectively the July agreement), Machine and Dynamic confirmed an oral agreement to, among other things, extend the deadline for the installation and commissioning of the lathe to September 19, 2003. The parties further agreed that any further delay would result in a $500 a day penalty assessed against Machine. On October 9, Machine delivered the lathe to Dynamic. It was subsequently installed, and, throughout the month of November, the lathe was tested and readjusted in connection with its final commissioning.

On December 9, Dynamic's president, Ven Fonte, wrote a letter to the vice-president of Machine, Norman Crepeau, which advised in relevant part: "As I stated to you early this morning on the telephone, we will grant you one last and final deadline for the machine to be fully and unconditionally commissioned by the close of business day, Friday December 19, 2003." On the following day, Fonte received additional information regarding the lathe that led him to conclude that it would not be able to meet the required specifications. Dynamic promptly notified Machine that it intended to retract the deadline extension. In a

letter dated December 11, counsel for Dynamic advised Machine that Dynamic was revoking acceptance of the lathe, demanded return of Dynamic's down payment and the payment of the penalty fees, and requested instructions concerning disposition of the lathe. Machine had not relied on the deadline extension granted in Fonte's letter of December 9 in any material way prior to Dynamic's written revocation of it on December 11.

On February 20, 2004, Dynamic filed this action in the Superior Court, seeking a declaratory judgment concerning its rights and remedies under the Uniform Commercial Code, and alleging breach of warranty, breach of contract, and unfair business practices in violation of G. L. c. 93A, § 11. Machine removed the action to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. §§ 1446(d) and 1332 (2000), and asserted a counterclaim of breach of contract. In October, the District Court judge heard Dynamic's motion for summary judgment and Machine's cross motion for partial summary judgment. The parties agreed that there were no material facts in dispute and consented to treat the matter as a case stated. The judge concluded that "Dynamic properly and timely revoked its December 9, 2003, letter extending the commissioning deadline, thus rendering Machine liable for breach of contract." He further determined that Machine did not violate G. L. c. 93A and that Dynamic was not entitled to recover punitive damages based on the penalty provision in the July 8, 2003, agreement. The judge certified the above question to this court because "the

resolution of the determinative issue in this case depends on a question of Massachusetts law as to which there are no clearly controlling precedents in the decisions of the Supreme Judicial Court of Massachusetts."

2. Discussion. The contract in this case is one for the sale of goods. Consequently, it is governed by the Commonwealth's version of art. 2 of the Uniform Commercial Code (UCC). G. L. c. 106, §§ 2-101 et seq. Section 2-209 of the UCC provides:

> "(1) An agreement modifying a contract within this Article needs no consideration to be binding.
>
> "(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.
>
> "(3) The requirements of the Statute of Frauds section of this Article (section 2-201) must be satisfied if the contract as modified is within its provisions.
>
> "(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.
>
> "(5) A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver."

The UCC does not define "waiver" or "modification," but they "are distinct concepts." Central Ill. Pub. Serv. Co. v. Atlas Minerals, Inc., 965 F. Supp. 1162, 1173 n.3 (C.D. Ill. 1997). Massachusetts common law defines waiver as the "intentional relinquishment of a known right," Doujotos v. Leventhal, 271

Mass. 280, 282 (1930), quoting Kent v. Warner, 12 Allen 561, 563 (1866); or, as one commentator has explained, "the excuse of the nonoccurrence of or a delay in the occurrence of a condition of a duty." 2 E.A. Farnsworth, Contracts § 8.5, at 447 (3d ed. 2004). A modification "is the changing of the terms of the agreement which may diminish or increase the duty of either party." 2A R.A. Anderson, Uniform Commercial Code § 2-209:49 (3d ed. 1997). While a waiver may be effectuated by one party, a modification "is the result of the bilateral action of both parties to the sales transaction." Id. Cochran v. Quest Software, Inc., 328 F.3d 1, 9 (1st Cir. 2003) ("Under Massachusetts law, the parties to a contract must agree to a modification"). By the plain terms of § 2-209 (5), a waiver is retractable in the absence of reliance. G. L. c. 106, § 2-209 (5). A modification, in contrast, cannot be retracted unilaterally.[2] BMC Indus., Inc. v. Barth Indus., Inc., 160 F.3d 1322, 1334 (11th Cir. 1998), cert. denied, 526 U.S. 1132 (1999) ("while a party that has agreed to a contract modification cannot cancel the modification without giving consideration for the cancellation, a party may unilaterally retract its waiver of a contract term provided it gives reasonable notice"). See 2A R.A. Anderson, Uniform Commercial Code, supra at § 2-209:53 ("Unilateral action by a

---

[2] In this respect, and as a general principle, we disagree with the Federal District Court judge's conclusion that "Dynamic was entitled to . . . revoke the December 9, 2003 letter extending the commissioning deadline, regardless whether that letter is termed a 'modification' or a 'waiver' under [G. L. c. 106,] section 2-209."

party cannot restore the contract to its original premodified form").

Dynamic contends that its letter of December 9, 2003, is a waiver (or at least a partial waiver) of the time by which Machine had a duty to perform,[3] and not a mutual agreement to change the terms of the contract. In support of this position, it points out that the letter does not expressly state that both parties "agreed" to the "last and final deadline" of Friday, December 19, 2003, and reflects only what Dynamic's president "stated" in that regard, without any reference to Machine's position on the matter.[4] Moreover, it argues that the use of the word "grant," as opposed to "agree," is dispositive.[5] Machine, on the other hand, argues that Dynamic's extension of the commissioning deadline constitutes a modification because:

---

[3] Pursuant to the July agreement, Machine was to have installed and commissioned the lathe by September 19, 2003. Thus by December 9, Machine had already been in breach of the contract for almost three months.

[4] In contrast, Dynamic's letter of July 8 begins as follows: "This letter is to put in writing the verbal understanding reached during our two phone conversations . . . ." It ends with the following request: "To acknowledge your concurrence with this agreement, please sign one of the two enclosed copies and return it to us for our files."

[5] Dynamic further argues that even if the letter of December 9, 2003, is construed as a modification, its terms should not be enforced because Machine breached its obligation of good faith. G. L. c. 106, § 2-209, official comment 2, 1 U.L.A. 400 (Master ed. 2004) ("modifications . . . must meet the test of good faith imposed by [the UCC]"). Specifically, Dynamic contends that Machine "offered delivery and commissioning dates that were unrealistic in anticipation of negotiating extensions of time to perform." The resolution of this issue, to the extent necessary to the ultimate disposition of the case, is not before us.

(1) the extension satisfies the Statute of Frauds[6]; (2) the extension was granted in a letter written and signed by Dynamic's president[7]; (3) the letter granting the extension "clearly demonstrates that both parties had discussed and agreed to the new commissioning deadline"; and (4) the terms of the letter are sufficiently definite.

Determining whether Dynamic's letter of December 9 (or the conversation to which it refers) constitutes a waiver or a modification is in large measure a question of fact. MacDonald & Payne Mach. Co. v. Metallic Arts of New England, Inc., 324 Mass. 353, 356 (1949) ("Ordinarily the question of waiver is one of fact"). Central Ill. Pub. Serv. Co. v. Atlas Minerals, Inc., 965 F. Supp. 1162, 1174 (C.D. Ill. 1997) (waiver is legal question only when facts are undisputed "and only one possible inference may arise from those facts"). As applied to this case, the answer turns on whether Dynamic and Machine mutually agreed to extend the commissioning deadline to December 19, 2003. Sargent

---

[6] General Laws c. 106, § 2-209 (3), provides that "[t]he requirements of the Statute of Frauds section of [art. 2] (section 2-201) must be satisfied if the contract as modified is within its provisions."

[7] General Laws c. 106, § 2-209 (2), provides that "[a] signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party." Here, the contract did not prohibit oral modifications. This case thus does not present the thorny issue whether an oral modification of a contract that forbids oral modifications constitutes an "attempt at modification" operating as a waiver under G. L. c. 106, § 2-209 (4). See Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280 (7th Cir. 1986).

v. Tenaska, Inc., 914 F. Supp. 722, 727 (D. Mass. 1996), aff'd, 108 F.3d 5 (1st Cir. 1997) ("Under Massachusetts law, generally speaking, one party cannot unilaterally change the obligations of another under contract. . . . Rather, the parties must expressly or impliedly agree to a modification"). The fact that the extension was granted in a signed writing does not of itself establish that the extension was intended to be a modification, and not a waiver. A waiver "can be inferred from a party's conduct and the surrounding circumstances," but it can also be "express," Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., B.L., 767 F. Supp. 363, 372 (D. Mass. 1991), and there is no reason why it cannot be in writing. Conversely, the absence of consideration for the extension of the time of performance does not preclude a finding that the extension was the product of a mutual agreement to modify the contract terms, as the UCC explicitly states that "[a]n agreement modifying a contract . . . needs no consideration to be binding." G. L. c. 106, § 2-209 (1).

We answer only the certified question, Woodward v. Commissioner of Social Sec., 435 Mass. 536, 538 (2002), and cases cited, and the judge has not asked us to determine whether the December 9 letter extending the time for performance constitutes a modification of the July agreement or a waiver of Machine's duty to perform by a particular date.