UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DYNAMIC MACHINE WORKS, INC., Plaintiff  VS.  MACHINE & ELECTRICAL CONSULTANTS, INC., Defendant | ) ) ) ) ) ) ) ) ) ) ) | Docket No. 04-10525-WGY |

**SUPPLEMENTAL AFFIDAVIT OF VENANZIORO FONTE**

I, Venanzioro Fonte, hereby depose and say as follows:

1. At all times relevant hereto, I have been the President of Dynamic Machine Works, Inc.("Dynamic").

2. This Affidavit supplements my Affidavit of August 31, 2004, submitted in support of Plaintiff's Motion for Summary Judgment.

3. As President of Dynamic, I oversaw the expansion of Dynamic's facility in Billerica, with construction completed and the expanded premises being occupied and utilized by Dynamic in 2002, long before Dynamic even contacted Mr. Norman Crepeau of Machine & Electrical Inc. about the potential purchase of a Johnford lathe in January, 2003.  Exhibit "B" attached hereto is the occupancy permit application documenting the dates final inspections were

- 2 -

performed after completion of the expansion, and before the Purchase Order for the lathe was signed.

4. The Purchase Order for the Johnford lathe dated January 13, 2003, provided for the price to include "F.O.B. Delivered on the floor".

5. On a number of occasions Norman Crepeau had visited the Dynamic facility in Billerica during the period after the expansion was completed but before the purchase order for the Johnford lathe was signed.

6. Not until shortly prior to the delivery of the Johnford lathe in September 2003 was inquiry made of Dynamic as to the size of the building openings and the ability of the Defendant to install the Johnford lathe "on the floor."

7. In order to expedite the delivery, installation and commissioning of the Johnford lathe, and to avoid further delays, Dynamic was forced to quickly make modifications to one of the openings to the expanded area of the facility. The building modification expenses make up the $7,020.00 paid by Dynamic to Jay Corporation.

8. Presently the machine size and its location on the manufacturing floor pose a substantial burden to the operation of Dynamic. Once the enlarged opening of the

- 3 -

building has been re-utilized to remove the machine from the premises, Dynamic must restore the opening to its original dimensions since its present unnecessary size gives rise to highly increased utility costs for heating and air conditioning.  All the costs to perform the work to bring the opening to its original size will eventually have to be borne solely by Dynamic since these costs have not been claimed in this action.

    9.  In light of Defendant's refusal to provide for disposition of the rejected Johnford lathe, Dynamic was forced to move it to a different area of the manufacturing floor in order to make space available for the incoming replacement lathe on December 17, 2003 and in lieu of spending the $48,900.00 to remove it for offsite storage set forth in the quote attached as Exhibit "A".

    10. At the time the Johnford lathe had to be removed from its original location, Dynamic's total manufacturing floor had already been equipped with electrical sub-panels complete of circuit-breakers adequate for servicing any machine existing or to be acquired in the future.  Given its large size and electrical power requirements, the Johnford lathe had been electrically powered by its very own line

- 4 -

from the company's "Power Room" directly to the machine. After Dynamic rejected and removed from its location the Johnford lathe, the electrical wiring that had been specifically installed for the Johnford lathe had to be removed since its location, size of the wiring and amount of amperage service could not be re-utilized for the replacement machine.  The expenses for installing and removing the power source are included in the $5,487.00 Dynamic paid to Gino DiPietrantonio Electric.

    11.  On the same Purchase Order by which Dynamic purchased the Johnford lathe from Defendant, Dynamic also purchased a large work-holding SMW Steady Rest for $45,000.00 and two work-holding SMW Chucks for a total of $71,000.00.  These machine accessories were purchased solely for utilization on the Johnford lathe.  At the request of Defendant, on February 27, 2002, Dynamic issued a check for $116,000.00 to the Defendant as full payment for the Steady Rest and the Chucks.  Following this payment, the Steady Rest and one of the Chucks were sent to the factory in Taiwan to be installed on and interfaced with the Johnford lathe electronically and mechanically.

- 5 -

12. While the two SMW Chucks could and have been utilized by Dynamic after the rejection of the Johnford lathe, the SMW Steady Rest is neither useable nor interchangeable with any equipment currently at the Dynamic facility. Its extremely large dimensional and physical size totally voids the possibility of its utilization on any equipment Dynamic is likely to purchase any time in the foreseeable future.

13. In my Affidavit of August 31, 2004, I cited installation labor of $21,029.00 as an expense related to the receipt, installation, alignment, inspection, troubleshooting, testing and care of the Johnford lathe. Dynamic's personnel that was involved with the installation and related problems of the Johnford lathe are salaried engineers and managers who were forced to abandon their productive duties and responsibilities during the ten weeks of attempts at commissioning the Johnford lathe. Such employees and the time devoted to the installation would be my time, President, of 30 hours; Kevin McGinley, Program Manager, for 40 hours; Nick Fonte, Manufacturing Manager, for 20 hours; Dave Lynch, Maintenance Manager, for 50 hours and Wayne Heath, Manufacturing Engineer, for 5 hours, all at

- 6 -

a cost of $100.00 dollars per hour.  As stated in my earlier Affidavit, the estimated total amount of $21,029.00 was reached by adding the above hours to the quantifiable hourly labor of Dale LeClair, Dynamic's Large CNC Lathe Dept. Supervisor.  Considering that Dynamic's billable hour for an engineer is $150.00 and considerably higher for a manager, I believe Dynamic's claimed figure for this work to be quite conservative and extremely reasonable.  Since Dynamic was hopeful of and expected a successful commissioning of the Johnford lathe, it saw no need to have its salaried employees keep detailed hourly records.  It is my firm and honest belief that, had we kept contemporaneous time records during this unfortunate situation, the total expended time would have been at a minimum double and most probably triple or quadruple what has been claimed.

14.  All the expenses and invoices which have been documented specifically were included in a 23 page fax sent from Dynamic to counsel for Defendant on October 12, 2004, soon after my deposition.  (See Exhibit "C".)

15.  Up until the entry of Judgment in this case, Dynamic incurred legal fees with its prior counsel of $29,736.00.

- 7 -

16. On November 30, 2005 Dynamic received a contract from the United States Navy for 2950 Zuni Missile Rocket Motor Casings. Contract performance requires the procurement of at least one or possibly two new large CNC lathes along with additional manufacturing space. No new lathe can be received until the Johnford lathe is removed from the Dynamic premises. Plaintiff will require use of the space currently occupied by the Johnford lathe and will no longer be able to continue mitigating its damages by storing the Johnford lathe on site. The Johnford lathe must be removed by the first week in February, 2006, to a storage facility outside of Dynamic at what was previously estimated to cost $48,900.00. Any and all costs associated with the relocating of the Johnford lathe will then become an integral part of this claim.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY this ___19th___ day of December, 2005.

*/s/ Venanzioro Fonte*
Venanzioro Fonte